DICK (LAIRD v.). See Case No. 7,990.
DICK (UNITED STATES v.). See Case No. 14,957.

## Case No. 3,893.

### DICKENSON v. The GORE.

[Newb. 45.][1]

District Court, D. Michigan. 1855.

COLLISION—STEAM AND SAIL—RIGHTS OF STEAMER—EVIDENCE—DEMEANOR OF WITNESS.

1. The manner and demeanor of witnesses, in giving testimony, will be considered where they conflict in their statements.

2. In a case of collision between a steamer and a sail vessel the former is not to be presumed to be in fault merely because, as a steamer, she has control over her own movements.

3. Steamers are to be treated as sailing with a fair wind and bound to give way to a vessel close hauled.

4. Where a collision has occurred between a steamer and a sail vessel, and the evidence shows that the steamer was in her regular course and adopted all the usual precautions to avoid the collision. the sail vessel having a fair wind. and the facts proved being inconsistent with the supposition of requisite care on the part of the vessel. the court will presume the latter to have been in fault.

This was a libel in rem for a collision, promoted by Charles Dickenson, owner of the scow Petrel, against the steamboat Gore. The libel alleges that in the month of October, 1853. the scow Petrel. a vessel of more than sixty tons burthen, enrolled and licensed for the coasting trade, &c., being in good condition. sailed from the port of Cleveland, Ohio, for the port of Detroit, Michigan: that while on the voyage. about 10 o'clock in the evening of the 3d of October. 1853. as the Petrel was sailing up the Detroit river, within a short distance of Detroit. with the wind up the river, and having a good white light, properly placed on her jib-boom. she was carelessly and negligently run into by a vessel which the steamboat Gore had in tow: that by reason thereof the foresail, mainmast, stanchions, bulwarks and rigging of the Petrel were damaged to the amount of one hundred and fifty dol-

lars: that the collision was occasioned by the carelessness and negligence of the officers and men on the Gore; and that the Petrel, being in her proper channel, and having good lights displayed, was in no fault. The answer of John Sloan, claimant and owner of the Gore, admits the collision, but denies that it was occasioned by carelessness on the part of the officers and men of the steamboat, and alleges that it was entirely the result of gross carelessness on the part of the men on the Petrel, stating the following facts in support of said allegations: That on the night in question the Gore left Detroit, on her way down the river, with the bark Pomona and the schooner White Squall in tow: that the night was clear: that the Gore had all her lights displayed and in good order: that the captain of the steamer was on deck with the captains of the vessels in tow: that they saw the Petrel coming up the river about three-quarters of a mile off. with a free wind: that when the Petrel was about half a mile distant, the captain of the steamer ordered her helm a-port: that the steamer was then close in towards the American shore, that being the shore usually taken by vessels descending the river: that the more the steamer ported her .helm the more the Petrel put her helm to starboard and continued to advance towards the steamer's centre light: that when the vessel was about four hundred yards off the captain of the steamer rang his bell and checked the steamer's headway: that the captain of the bark in tow called out from the steamer to. the Petrel and asked her master which vessel he was going to run into, so that preparation might be made for him: that when the Petrel was yet three hundred yards off the steamer was backing and had hauled as far to port as it was safe to go: that the former still continued to approach the latter, until she came within a very few yards of her: that the Petrel then suddenly ported her helm, but only just in time to cause her to come in collision with the jib-boom of the bark which the steamer had in tow, whereby some comparatively trivial damage was occasioned to the Petrel.

Alfred Russell. for libelant.
George V. N. Lothrop. for claimant.

WILKINS, District Judge. The suit was brought--to recover the damages occasioned to the libelant. the owner of the scow Petrel, which was slightly injured by coming in collision with the steamer Gore. in the Detroit river, on the 3d of October last. The scow was coming up the river at night, before and with a fair wind, at the rate of two miles an hour. and according to the testimony of her captain, close to the Canada shore. and nearly opposite the village of Sandwich. The night was starlight. The steamer having two vessels in tow, was first discovered about half a mile off descending

---

[1] [Reported by John S. Newberry, Esq.]

the river. The collision took place close in by the American shore, almost directly opposite Fort Wayne. The proofs were taken in open court, and the manner as well as the statements of the witnesses, under the immediate personal observation of the court. This was of some consequence, as the testimony in relation to the leading facts is wholly irreconcilable; and when such is the case, the demeanor of the witness will frequently give the preponderance to one side or the other. The two witnesses brought to sustain the claim of the libelant, are the master and the mate. Their statements do not altogether agree. While the clear, consecutive and circumstantial narrative of Captain Sloan, is fully sustained by Botswood, the wheelsman, and Leonard, the mate of the White Squall, one of the vessels had in tow. They unitedly contradict Boyle, the master of the scow, as to the course of the scow, and the place of collision. They unitedly testify to the course of the steamtug being direct for the fort, keeping close to the American shore. Whereas, Boyle and his mate differed somewhat as to this, and also as to the course of the scow; the latter testifying, that the scow kept near the centre of the river, on the Canada side of the channel. John Campbell, the wheelsman, was not brought forward as a witness.

Now, where it has been clearly established, that the respondent's vessel was not in fault in any respect, where her course was proper, and not such as to endanger an ascending vessel, that was on the look-out and careful; where she had a proper watch, and proper lights, gave the alarm signal in time, ported in time, kept ported, reversed her engine, and backed, and did all in her power to avoid the scow; all of which facts appear in this case, and are inconsistent with requisite care on the other side; the court cannot attribute the collision to unavoidable accident, but must presume from the testimony, that the fault was in the scow, either that of inexcusable ignorance or recklessness in the master; and I think the latter. The rule as cited in The Leopard [Case No. 8,264], from the Shannon, that the vessel which has it most in her power to vary her course and keep out of the way, must do so, is not infracted under the circumstances, by the satisfactory proof of the steamer's course and the conduct of her master. It is certainly not to be presumed when a collision takes place between a steamer and a sail vessel, that the former must be in fault, regardless of the course taken, merely because as a steamer she has ever the control over her own motions. It is the old rule applied to steam navigation, treating steamers as sailing with a fair wind, and therefore bound to give way to a vessel close hauled. And here she did give way. She hugged the American shore as closely as possible, keeping as far off as she could, rang the signal bell, to give the scow, which was ascending

with a fair wind, notice of danger, and let off steam. Yet, notwithstanding all her precautions, with a recklessness unexplained by the libelant, the scow shot directly across from Sandwich, and collided with the bark in tow. I can do no otherwise than decree a dismissal of the libel, with costs. Decree entered accordingly.